AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of | **UNDER SEAL** |
| *(Briefly describe the property to be searched or identify the person by name and address)* | Case No. 2:20sw 142 |
| U.S.P.S. Priority Mail  9505 5066 6361 0163 1104 73 addressed to (no name), 2609 Granby St, Norfolk, VA 23517 | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

U.S. Postal Service Priority Mail Parcel 9505 5066 6361 0163 1104 73 addressed to (no name), 2609 Granby St, Norfolk, VA 23517 currently located at the U.S. Postal Service, OIG, in Chesapeake, VA 23322.

located in the _____Eastern_____ District of _____Virginia_____ , there is now concealed *(identify the person or describe the property to be seized)*:

controlled substances, currency, and/or negotiable instruments

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to Distribute and Possess with Intent to Distribute Narcotics; Cocaine, a Schedule II Controlled Substance |

The application is based on these facts:

See Attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA

_ /s/ Sherrie S. Capotosto, AUSA
*Printed name and title*

_____
*Applicant's signature*

Jessica Farrell, Special Agent, USPS-OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: ____June 29, 2020____

_____
UNITED STATES MAGISTRATE JUDGE

City and state: ___Norfolk, VA___

_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### I. Subject parcels

This is an Affidavit submitted in support of an Application for a Search Warrant for two subject U.S. Mail Parcels, hereinafter "the subject parcels." The subject parcels are currently located at the office of the USPS OIG, 1100 Battlefield Boulevard South, in Chesapeake, Virginia, which is within the Eastern District of Virginia. The subject parcels are specifically identified as follows:

| Subject Parcels | Express (E), Priority (P), or First Class with tracking (F) and Tracking ID number | To: Name and Address | From: Name and Address |
|---|---|---|---|
| 1. | (P) 9505 5066 6371 0167 1604 95 | (no name), 2600 Granby St, Norfolk, VA 23517 | None |
| 2. | (P) 9505 5066 6361 0163 1104 73 | (no name), 2609 Granby St, Norfolk, VA 23517 | None |

### II. Affiant

I, Jessica R. Farrell, being duly sworn, hereby depose and state:

1. I have been employed as a Special Agent for the United States Postal Service, Office of Inspector General (USPS OIG) since July 2014. I am currently assigned to the Capital Metro Area Field Office, Richmond District, and domiciled in Chesapeake, Virginia. I am responsible for investigating narcotics violations involving Postal Service employees. I have completed 12 weeks of basic investigative training, which included various aspects of federal law enforcement training related to the investigation of narcotics related offenses. I have also completed the USPS OIG's narcotics training course. Prior to joining the USPS OIG, I was employed as a Special Agent for the Naval Criminal Investigative Service (NCIS) from November 2005 to July 2014. From 2008 to 2012, I worked in a special operations unit focusing primarily on narcotics investigations. Additionally, I completed an advanced training course at the federal law enforcement training

center focused on undercover operations and narcotics investigations. Throughout my tenure as a law enforcement officer, I have participated in numerous narcotics related operations, search warrants, and arrests.

2.   The facts and information contained in this affidavit are based on my personal knowledge as well as that of the other agents involved in this investigation.  All observations that were not made personally by me were related to me by the persons who made the observations.  Sources of information used routinely in this process include verifying zip codes through an internal database maintained by the U.S. Postal Service, and checking associations between names and addresses in a database used by law enforcement named ACCURINT.  This affidavit contains only that information necessary to establish probable cause in support of an application for a search of the subject parcels.  This affidavit is not intended to include each, and every fact and matter observed by or made known to agents of the government.

3.   Based upon my training and experience in the field of narcotic interdiction through the mails, I know that there are suspicious characteristics common to many packages that contain narcotics and controlled substances.  These factors, detailed more fully below, are used as a pointer system to identify packages requiring further investigation.

4.   A totality of characteristics creates reasonable suspicion for removing the parcels from the mail stream for further investigation.  While there are many characteristics that experienced Inspectors look for, the most common factors or suspicious characteristics routinely observed in the course of screening packages are as follows:

(a) Priority Mail Express and Priority Mail.  As an alternative to First Class Mail, which does not provide a customer the ability to track the progress of a parcel through the system, the U.S. Postal Service offers Priority Mail Express and Priority Mail.  Contrasts observed

between legitimate business parcels and drug parcels with regard to the use of Priority Mail

Express and Priority Mail:

i.   *Priority Mail Express*:  Priority Mail Express is guaranteed (money back) to
     be delivered on a set date and time, usually overnight.  (That deadline is
     determined at the time of mailing.)  The customer receives a receipt with this
     guaranteed information and can opt for a signature requirement at the receiver
     end or not.  Customers can track the parcel online by its distinct Priority Mail
     Express tracking number.  The weight of the package and the distance
     traveled are the two main factors in setting the price.  Priority Mail Express
     costs more than Priority Mail.

ii.  *Priority Mail*:  Priority Mail has a delivery service standard of two to four
     business days, but is not guaranteed.  Priority is a less expensive alternative
     to Priority Mail Express, but still provides the ability to track a parcel.

Legitimate businesses using Priority Mail Express typically have a business or corporate

account visible on the mailing label, which covers the cost of the mailing, in contrast to the

drug distributor who will pay at the counter with cash or a credit card.  Business Priority

Mail Express parcels typically weigh no more than eight ounces, and business Priority Mail

parcels typically weigh no more than two pounds.  Drug packages typically exceed these

weights.  In my experience, it is fairly easy to separate out smaller parcels, which constitute

seventy to eighty percent of all Priority Mail Express and Priority Mail parcels, from other

parcels.  Address labels on business parcels are typically typed, and address labels on drug

packages are typically handwritten.  Typically, drug traffickers using Priority Mail Express

will opt out of the signature requirement.

(b) Invalid Sender/Return Address.  When drugs are shipped through the mails, the senders

generally do not want them back.  To distance themselves from parcels containing drugs, the

return addresses and the names of senders are often fictitious or false.  A fictitious or false

address can be anything from an incorrect zip code to a non-existent house number or street.

The name of the sender is also typically invalid in one of several ways. I have seen

packages sent by persons with names of celebrities, cartoon characters, or fictional persona.

More often, a search of the CLEAR database reflects that there is no association between the

name of the sender and the address provided.

(c) Invalid Recipient/Address. It may appear counterintuitive and counterproductive to put

the wrong receiving address on a package, but often the named recipient is not associated

with the address. This provides plausible deniability to anyone receiving the package as to

their knowledge of its contents. Sometimes drug packages are addressed to vacant

properties with the expectation that the postal carrier will just leave it at the address. The

intended recipient will then retrieve it from that location and hope to remain anonymous.

(d) State of Origin. If other criteria are present, I know from experience and training that

domestic packages sent from California, Oregon, Washington, Arizona, Texas, Nevada, and

Colorado can indicate that a parcel contains controlled substances.

(e) Additional Indicators. Other factors indicative of drug trafficking that are seen less

frequently, but are nevertheless noteworthy, include:

    i.    *Smell*: The odors of cocaine, marijuana, and methamphetamine are distinct, and, through experience, postal inspectors are familiar with these odors. On occasion, a parcel will emit an odor that is easily recognized without the assistance of a canine. Other smells that suggest the contents are narcotics are from masking agents. Common masking agents used in an attempt to thwart law enforcement and canines typically include dryer sheets, coffee, mustard, and any other substance that releases a strong smell.

    ii.    *Heavy Packaging*: Heavily taped parcels are another factor that will suggest a drug parcel. I have also observed excessive glue on package flaps.

    iii.    *Shipped from a different zip code than indicated on the return address:*

4

Parcels shipped from a different zip code than indicated in the return address, which is often fictitious, is another indicator I often observe on drug parcels.

5.  It is my experience that when these factors are observed, the alert of a trained canine on the package will follow.  As a result, these factors become a reliable way to profile the parcels being shipped every day.

### III.  Statement of Facts

6. The following factors or suspicious characteristics are present in the subject parcels:

| Subject parcel Express, Priority, or First Class | From Source State: | Weight: | Label: | Name and Address of Sender associate? Yes / No | Name and Address of Recipient associate? Yes / No | Canine Alert? |
|---|---|---|---|---|---|---|
| 1. Priority | Yes - CA | 3 lbs 13.2 oz | Electronic | Unknown | Unknown | Yes |
| 2. Priority | Yes – CA | Not stated | Electronic | Unknown | Unknown | Yes |

7.  In October 2019, the investigative team comprised of Special Agents from USPS OIG, and Inspectors from U.S. Postal Inspection Service (USPIS), began investigating Gary TURNER, USPS City Carrier in Norfolk, Virginia, for possible employee collusion.  The OIG regularly reviews USPS databases for large numbers of suspected drug parcels destined for single USPS Letter Carrier routes, which can be an indication of carrier collusion in drug conspiracies.

8.  Beginning in May 2019, numerous suspected drug parcels destined for TURNER's route were identified. Covert cameras installed in TURNER's Long-Life Vehicle (LLV), as well as video surveillance obtained from a private parking garage at 201 W. 21st Street, Norfolk, Virginia, (the first stop on TURNER's route) revealed TURNER meeting with a white male at various locations along his route. Law enforcement database inquiries identified the individual as Michael R. CARTER of Portsmouth, Virginia. On numerous occasions since October 2019, TURNER was

5

observed on surveillance video providing CARTER with parcels suspected to contain narcotics. In exchange, CARTER was observed providing TURNER with white envelopes containing various sums of cash.

9. On April 29, and May 6, 2020, two parcels originating in Los Angeles, California, and destined for 2601 Granby Street, Norfolk, Virginia, were identified. A review of surveillance footage revealed that on April 29, 2020, TURNER scanned an image on his cell phone while parked in front of the recipient address but did not deliver a parcel to the address. Later that day, TURNER was observed providing CARTER with a parcel along his route. On May 6, 2020, TURNER was observed scanning a parcel while parked in front of the recipient address but did not deliver the parcel. Later that day, TURNER was observed on video handing a parcel to CARTER along his route.

10. On May 21, 2020, an analysis of parcels destined for TURNER's route identified a parcel also destined for 2601 Granby Street, Norfolk, Virginia 23517. The parcel matched the address and description of previous parcels believed to have been handed off to CARTER in exchange for cash. The parcel was subsequently seized from the mail stream and a federal search warrant was obtained to identify the contents of the parcel.

11. On May 26, 2020, the parcel was opened and was found to contain approximately three pounds, five ounces of presumptive positive marijuana.

12. On June 16, 2020, three additional parcels suspected to contain marijuana were destined for TURNER's route. On June 17, 2020, the investigative team conducted surveillance of TURNER as he delivered two suspected narcotics parcels to CARTER in the parking garage of 201 West 21st Street, a distance away from the intended delivery address. CARTER was then observed returning to his residence.

13. On June 18, 2020, the investigative team and the Norfolk Police Department (NPD) conducted surveillance of TURNER as he delivered the third parcel to CARTER near the intersection

of Omohundro Avenue and West 22nd Street, Norfolk, Virginia, a distance away from the intended delivery address. NPD officers then approached CARTER while he was parked in front of Dollar Tree, 400 West 21st Street, in Norfolk. CARTER admitted to being in possession of marijuana and was subsequently placed under arrest. A search of CARTER's vehicle revealed a handgun and a small backpack containing a large sum of cash, in addition to approximately three pounds of presumptive positive marijuana located inside the parcel. A state search warrant executed on CARTER's residence revealed additional quantities of suspected marijuana, drug paraphernalia and several firearms.

14.  Later on June 18, 2020, the investigative team stopped and temporarily detained TURNER while he was delivering mail on his route. TURNER was placed in Inspector Tom Sylvester's law enforcement vehicle. Inspector Sylvester and I conducted a post Miranda interview of TURNER. TURNER admitted to receiving money in exchange for the parcels he delivered to CARTER. TURNER was released to Postal Service management at the scene and placed on immediate suspension.

15. The subject parcels were scheduled to arrive after CARTER was placed under arrest and after the investigative interview of TURNER. Upon arrival to the post office, the subject parcels were subsequently seized from the mail stream.

16. On June 23, 2020, Norfolk Police Detective R.M. Jackson and his narcotic detecting canine "Ziggy," responded to the USPIS Domicile in Norfolk to screen the subject parcels. Standard protocols for canine detection were followed. Specifically, the subject parcels were placed among other boxes in a hallway in the Norfolk Processing and Distribution Center. Each subject box was placed in a separate parcel line-up. At that time, Det. Jackson and "Ziggy" were brought in to search the area. Detective Jackson has been a police officer for approximately 17 years, and a canine handler since November 2019. He is specifically trained to interpret the reactions of canine "Ziggy" in detecting the odor of a controlled substance. Detective Jackson observed canine "Ziggy" and then

7

informed me that the dog alerted on the subject parcels. A copy of the credentials for Detective Jackson and K-9 "Ziggy" is attached to this affidavit as Exhibit A.

### IV.  Conclusion

17.  I submit that based upon the above indicators exhibited by the subject parcels, and my training and experience; there is probable cause to believe that the above-described subject parcels contain narcotics or controlled substances and/or materials relating to the distribution of controlled substances through the United States Mail. I request the issuance of a search warrant directing the search of the subject mail parcels as described and the seizure of the subject mail parcels and enclosed materials relating to the distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. The subject mail parcels are presently located at the office of the USPS OIG, 1100 Battlefield Boulevard South, Chesapeake, Virginia.

Further, your affiant sayeth naught.

Jessica R. Farrell
Special Agent USPS

Seen and Reviewed:

_____/s/_____
Sherrie S. Capotosto
Assistant United States Attorney

SWORN AND SUBSCRIBED TO TELEPHONICALLY BEFORE ME, this  29th  day of June, 2020.

UNITED STATES MAGISTRATE JUDGE
UNITED STATES MAGISTRATE JUDGE
at Norfolk, Virginia

8



*City of*
**Norfolk**
*Police Department*

Inv R.M. Jackson has been employed by the Norfolk Police Department for approximately 17 years Inv Jackson was assigned to the Vice and Narcotics Division for approximately 13 years. During Inv Jackson's time Narcotics he has been assigned to The Street Response Unit and Mid-Level Narcotics Unit. He was later assigned to The Interdiction Team where he has approximately 11 months experience as a narcotics detector dog handler.

Inv Jackson has been recognized as an expert witness in the recognition, packaging and use of narcotics in Norfolk General District Courts and Norfolk Circuit Courts. Inv Jackson has completed over 512 hours of training in the field of K9 Narcotic Detector Dog training and graduated the Norfolk Police Narcotic Detector Dog Program on November 8, 2019. Inv Jackson also has certified with a Norfolk Police K-9 through the standards set forth by Virginia Police Work Dog Association. Inv Jackson has been involved in numerous investigations, search warrants, operations, and surveillances relating to narcotic offenses. This affiant has also conducted interviews with several narcotic dealers and users. Investigator Jackson has completed Norfolk Police Interdiction training and Advanced Interdiction Training. Inv Jackson has attended numerous narcotic related schools and training seminars sponsored by the Virginia Department of Criminal Justice Services, City of Norfolk, Drug Enforcement Administration, and Bureau of Alcohol Tobacco and Firearms.

Canine "Ziggy" has completed numerous hours training and graduated the Norfolk Police Narcotic Detector Dog Program. Canine "Ziggy" has also certified in the detection of narcotics: Cocaine, Heroin, Methamphetamine, Marijuana and Ecstasy through the standards set forth by Virginia Police Work Dog Association.

## *Parcel Screening*
## *US Mail Facility*

On June 23, 2020, I went to the Norfolk Processing and Distribution Center located at 600 Church St Norfolk, VA for the purpose of screening a parcel for narcotics. Inspectors from the United States Postal Inspection Service placed a Priority Mail Parcel, tracking number 9505 5066 6371 0167 1604 95 addressed to 2600 Granby Street, Norfolk, VA 23517-1426" in a parcel lineup with other parcels of similar size and shape. I deployed my narcotic Detector Dog "Ziggy" made a positive alert

1

on the suspect parcel, indicating the presence or odor of narcotics at approximately 1306 hours. I declare under penalty of perjury that the foregoing is true and correct.

On June 23, 2020, I went to the Norfolk Processing and Distribution Center located at 600 Church St Norfolk, VA for the purpose of screening a parcel for narcotics. Inspectors from the United States Postal Inspection Service placed a Priority Mail Parcel, tracking number 9505 5066 6361 0163 1104 73 addressed to 2609 Granby Street, Norfolk, VA 23517-1425" in a parcel lineup with other parcels of similar size and shape. I deployed my narcotic Detector Dog "Ziggy" made a positive alert on the suspect parcel, indicating the presence or odor of narcotics at approximately 1308 hours. I declare under penalty of perjury that the foregoing is true and correct.

Inv. R.M. Jackson
Vice and Narcotics
Norfolk Police Department